# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 4331 | **DATE** | 10/14/2004 |
| **CASE TITLE** | Maurice Mays vs. City of Des Plaines et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** The motion (Doc 4-1) to dismiss the City of Des Plaines is granted, without prejudice. If Mays does not amend his complaint with a cognizable claim against the city, consistent with his obligations under Fed. R. Civ. Proc. 11 before Tuesday, December 14, the dismissal shall become with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | number of notices |
| Notices mailed by judge's staff. | OCT 15 2004 date docketed |
| Notified counsel by telephone. | |
| ✓ Docketing to mail notices. | JXM docketing deputy initials |
| Mail AO 450 form. | |
| Copy to judge/magistrate judge. | |
| SCT courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
OCT 1 5 2004

MAURICE MAYS, )
)
Plaintiff, )
)
vs. ) 04 C 4331
)
CITY OF DES PLAINES, ILLINOIS; CITY OF )
CHICAGO, ILLINOIS; DES PLAINES POLICE )
OFFICER MICHAEL MEYER (Star #403), B. )
RUZICKA (Star #425), HARRISON (Star )
#unknown), SERGEANT PRIM (Star #742), )
DETECTIVE C. MIERZWA (Star #386), )
DETECTIVE G. FORTIER (Star #268), all sued )
in their personal capacities; and CHICAGO )
POLICE OFFICERS JOHN DOES, all sued in )
their personal capacities, )
)
Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

Plaintiff Maurice Mays has filed an action under 42 U.S.C. § 1983 against the City of Des Plaines, the City of Chicago, and various police officers alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights. This matter is before the Court on the motion of Defendant City of Des Plaines to dismiss it as a party pursuant to Fed. R. Civ. Proc. 12(b)(6). For the reasons discussed below, the motion is granted.

## BACKGROUND

The following facts are taken from plaintiff's complaint, the allegations of which are assumed as true for the purposes of a motion to dismiss. See Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993).

The chain of events detailed within the complaint began in the early hours of April 24, 2003, in Des Plaines. The city's police department received a call from a resident regarding an attempted burglary in her garage. The Des Plaines officers named in the complaint participated in the response to the resident's call in various capacities. In particular, Defendants Ruzicka and Harrison chased a man seen running from the residence, and Ruzicka claimed to have come close enough to be able to see the man's face. Despite this proximity, the man apparently eluded the officers.

Meanwhile, Defendant Prim discovered a van parked across the street from the allegedly burgled residence. Inside the van (which had been stolen from its owner in Northbrook) were several items later identified as belonging to the owner of the garage. Also inside was a woman, who informed the officers that the man they had seen running from the garage lived in a particular area on the north side of Chicago. Around noon the same day, Defendants Mierzwa and Fortier visited that area, which contained an apartment rented by Mays' girlfriend. Upon their arrival at the girlfriend's

apartment building, the detectives saw a car that had been reported stolen in Des Plaines the same day parked less than a block away.

Based on these facts and some others detailed in the complaint, the detectives contacted members of the Chicago police department, and the officers attempted to contact the residents of the apartment via telephone and by knocking on the front door. According to the complaint, no response was forthcoming, but an officer outside the apartment reported seeing movement inside through a window. One of the detectives, who was inside the building, claimed to have heard objects being moved around and clicking noises emanating from inside the front door. The officers then entered the apartment. Mays contends that, at that time, he was sleeping inside. He claims that he was still in bed when the officers entered the bedroom. According to Mays, the officers had neither a search warrant for the premises nor an arrest warrant for him. The complaint asserts that Mays had been in the apartment since the early evening hours of the day before.

The officers took Mays into custody and brought him to a police station in Des Plaines, where Ruzicka identified him as the person he had seen near the garage earlier that morning. Mays was charged with burglary and possession of a stolen vehicle. Unable to post the money required for release pending trial, he remained in custody

until April 6, 2004. On that date, the state obtained a *nolle prosequi* dismissal of the proceeding and Mays was released.

On June 30, 2004, Mays filed suit against both cities as well as named and unnamed police officers allegedly involved in the events detailed above. The complaint asserts that Defendants' actions were in violation of Mays' Fourth, Fifth, Sixth, and Fourteenth Amendment rights. It also alleges damage to or wrongful seizure of his personal property. Des Plaines now moves that it be dismissed from the suit pursuant to Fed. R. Civ. Proc. 12(b)(6), contending that Mays has failed to state a cognizable claim against it.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d 786, 792 (7th Cir. 1996). In ruling on a motion to dismiss, the court must construe the allegations of the complaint in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski, 998 F.2d at 461. A complaint should not be dismissed for failure to state a claim "unless it appears

beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). With these principles in mind, we examine the motion before us.

## DISCUSSION

Mays' complaint finds its foundation in 42 U.S.C. § 1983. Every § 1983 action must contain at least two elements. See Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913 (1981). First, the conduct complained of must be committed by a person acting under color of state law. See id. Second, the conduct must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. See id. For claims against a municipality, however, a plaintiff cannot stop with just those two allegations. See Monell v. Department of Soc. Serv., 436 U.S. 658, 694, 98 S. Ct. 2018, 2038-39 (1978). To state a claim against a municipal entity, a complaint must allege that the conduct leading to the injury resulted from enforcement of an express policy, an instance of a widespread practice that is so permanent and pervasive that it takes on the force of law, or an action of a person with final policymaking authority for the municipality. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S. Ct. 915, 926 (1988) (plurality opinion); Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S. Ct. 1292, 1300 (1986) (plurality opinion); Monell, 436 U.S. at 690, 98 S. Ct. at 2035. In other words, the governmental entity

itself must be a "moving force" for the alleged injury before liability can attach; otherwise it cannot be fairly said that the injurious acts are truly those of the municipality. See, e.g., Bd. of County Comm'r of Bryan County, Okla. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997).

We do not suggest that a § 1983 complaint, whether directed toward an individual or a municipality, must satisfy a heightened standard. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 165, 170, 113 S. Ct. 1160, 1163 (1993). However, even under the Leatherman standard, a § 1983 claim against a municipality must contain something more than bare allegations of municipal wrongdoing. See Duda v. Bd. of Educ. of Franklin Park Publ. Sch. Dist., 133 F.3d 1054, 1061 (7th Cir. 1998). A § 1983 plaintiff, like any other, must provide enough information in the complaint to alert the defendant of the gist of the claimed injury. See Perkins v. Silverstein, 939 F.2d 463, 467 (7th Cir. 1991). In the context of an alleged constitutional violation by a municipal entity, this means that a plaintiff must include allegations in the complaint that indicate the existence of a policy or practice. Otherwise, the complaint against the municipality would, unacceptably, sound only in *respondeat superior*. See Monell, 436 U.S. at 690, 98 S. Ct. at 2035; Strauss v. City of Chicago, 760 F.2d 765, 768 (7th Cir. 1985).

In the present case, Mays' complaint is devoid of any allegation with respect to the City of Des Plaines, let alone an allegation that would fall into one of the three categories detailed above. It contains a description of the events of April 24, 2003, but does not even hint at policies or customs outside of that incident. Nor does Mays claim that any of the persons involved are final policymakers for Des Plaines. See Pembaur, 475 U.S. at 483, 106 S. Ct. at 1300; Duda, 133 F.3d at 1061. Without involvement of such an official, a single incident of unconstitutional activity by a government employee is insufficient to show an unofficial policy that could give rise to municipal liability under § 1983. See, e.g., City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

The only allegation that even arguably connects to the City of Des Plaines to the conduct complained of is found in ¶ 67 of the complaint, where Mays states that the Des Plaines police officers were "acting under color of state law as policemen of the City of Des Plaines." Even construed in the light most favorable to Mays, this language points only to an employer-employee relationship between the city and the alleged wrongdoers, rather than an indication that the city supplied the impetus for the claimed tortious behavior. As a result, a material element of the claim against the City

of Des Plaines is missing, and the motion to dismiss Des Plaines from the suit is granted.[1]

## CONCLUSION

Based on the foregoing analysis, the motion to dismiss the City of Des Plaines is granted, without prejudice. If Mays does not amend his complaint with a cognizable claim against the city, consistent with his obligations under Fed. R. Civ. Proc. 11 before Tuesday, December 14, the dismissal shall become with prejudice.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: OCT 14 2004

---

[1] In fact, Mays acknowledges as much in his response, noting that he currently has no basis to assert that any unconstitutional policy existed.